1692

Ida D. McMASTER, Florence D. Fishburne and Elizabeth D. Martin, Appellants v. Charles R. STRICKLAND, Respondent.

(409 S.E. (2d) 440)

Court of Appeals

*Henry Dargan McMaster* and *Joseph D. McMaster*, both of *Thompkins & McMaster*, Columbia, *for appellants*.

*J. Dwight Hudson*, of *Hudson & Sweeny*, Conway, *for respondent*.

Heard May 6, 1991.

Decided Sept. 23, 1991.

SHAW, Judge:

Appellant-sellers, McMaster, Fishburne and Martin, brought this action against respondent-purchaser, Strickland, for breach of a contract to purchase certain property. From an order of the court in favor of the purchaser, the sellers appeal. We reverse and remand.

The purchaser entered into a contract of sale with the sellers on October 2, 1987 to purchase a .74 acre lot in North Myrtle Beach for $50,000. Prior to execution of the contract, the parties negotiated the terms of the contract. It was made clear during these negotiations that the purchaser intended to use the property for homesites, that the property was low and wet, and in order to fill the wet property, permits from regulatory agencies would be required. The purchaser, a realtor, first became involved with this property after a friend who was negotiating for the property decided to "back away" from it because of the wetlands situation. The purchaser believed he could obtain the permits and therefore went on with negotiations in place of his friend. Before he signed the contract, the purchaser's friend informed him that the Corps of Engineers had told the friend that the property in question was wetlands.

The contract at hand contains the following pertinent terms:

> 2. *Conveyance.* The conveyance of the aforesaid real property shall be subject to all easements, reservations, rights-of-way, restrictions, encroachments, and covenants of record which may affect the above described property, *and all governmental statutes, ordinances, rules and regulations.* (emphasis added).

5. *Date of Conveyance.* Sellers agree to convey the real property by marketable title and deliver a proper warranty deed ... which transaction shall close on or before January 1, 1988.

8. *Default.* If the Purchaser should default under this agreement, the Sellers shall retain all funds paid by Purchaser as liquidated damages and not as a penalty, and also have the option of suing for damages, or specific performance, or of rescinding this contract. Further upon default by Purchaser, if Sellers retain an attorney to protect or pursue their legal rights, Purchaser shall pay to Sellers reasonable attorney's fees.

9. *Title Condition.* The Sellers represent as to the real property described above that their title is good and marketable and insurable by a title insurance company reasonably acceptable to Purchaser.

10. *Representations by Purchaser.* Purchaser represents and warrants that Purchaser has inspected Sellers' premises and knows it[s] physical condition. Purchaser represents and warrants that Purchaser has not relied upon any representations by Sellers as to the premises. Purchaser further agrees to accept the real property set forth herein in an "as is" condition.

11. *Entire Agreement.* The parties hereto agree that this written agreement expresses the entire agreement between the parties, and that there is no other agreement, oral or otherwise, modifying the terms hereunder.

16. *Disclaimer.* It is expressly understood and agreed that Sellers make no representations, expressed or implied, about the fitness or condition of this property or any improvements thereon, that any such implied representations are hereby expressly disclaimed, and that the Purchaser takes the property, after full inspection, as it is.

On December 23, 1987, a biologist with the Army Corps of Engineers inspected the property in question and on January 19, 1988 sent a letter to the North Myrtle Beach Building Inspector stating the entire .74 acre lot would be classified as

wetlands. On December 27, 1987, the purchaser notified the sellers that he did not intend to purchase the property. Sometime after the institution of this lawsuit, the purchaser applied for a permit to fill the lot. On January 25, 1988, the North Myrtle Beach Building Inspector wrote to advise him the property had been designated to be a wetlands area and therefore the grading and filling permit was denied.

After the hearing on this matter, the trial judge issued his order finding the purchaser's rejection of the contract was justified because the sellers could deliver neither marketable title nor insurable title. He further found that the sellers' failure to tender the deed was a breach of contract giving the purchaser the right to rescind.

The sellers contend the trial judge erred in finding they could not deliver marketable title to the property based on the fact that the property was designated as wetlands rendering it useless and of no value. We agree. It is clear the trial judge confused the concepts of title and marketability with use and value. That is, there is no evidence that the sellers do not own the property, therefore they have title. Further, there is no evidence it was unlawful to sell the property, therefore it is legally, if not actually marketable.

While the purchaser may not be able to use the property for the purpose for which he sought, such does not mean the sellers cannot deliver marketable title. This simply boils down to a case of the purchaser taking a calculated business risk. The fact that he is dissatisfied with the results will not excuse him from the contract without some condition stated in the contract allowing his refutation of the same. The record is clear that all parties, including the purchaser, were aware of the wetland nature of the property and the necessity of obtaining a permit to fill the property. Although the purchaser believed he would be successful on obtaining the necessary permits, no such contingency was placed in the contract. Neither was there any contingency that the purchaser be successful in borrowing funds on the property in question. In that there is no evidence the sellers were incapable of providing marketable title as required by the contract, we find the trial judge erred.

Further, there is no evidence whatsoever that the title to the property was not insurable. The record before us indicates title to the property is in fact insurable, albeit

with exception taken to the fact the land has been designated as wetlands. The contract specifically provides that the property is subject to all governmental statutes, ordinances, rules and regulations. This would include wetlands laws and regulations. The fact that exception would have to be taken when insuring the title is irrelevant since such was contemplated by the contract.

Finally, the trial judge clearly erred in finding the sellers failed to tender the deed, thus breaching the contract and giving the purchaser the right to rescind. It is well settled that where one party notifies the other that he elects to break the contract, the tender would be an idle performance, and the law does not exact such a requirement. *McCall Co. v. Hobbs-Henderson Co.*, 138 S.C. 435, 136 S.E. 762 (1927).

For the foregoing reasons, we find the purchaser was not entitled to rescission of the contract. The purchaser admitted he simply made a mistake by signing a contract without certain conditions to protect him in the event he could not obtain the necessary permits. The function of courts is to adjudge and enforce contracts as they are written and entered into by the parties. When such contracts are capable of clear interpretation, the court cannot exercise its discretion as to the wisdom of such contract. *Charles v. Canal Insurance Co.*, 238 S.C. 600, 121 S.E. (2d) 200 (1961). Hardship alone provides no basis for relieving one from a contract. *Gamble, Givens & Moody by Gamble v. Moise*, 288 S.C. 210, 341 S.E. (2d) 147 (Ct. App. 1986). However, in that the contract provides for different options in the event of default by the purchaser and considering that the decision to grant or deny specific performance of such a contract is within the sound discretion of the trial judge,[1] we do not necessarily hold the sellers are entitled to specific performance. We therefore remand for further proceedings consistent with this opinion.

Reversed and remanded.

SANDERS, C.J., and GARDNER, J., concur.

---

[1] *See Guignard v. Atkins*, 282 S.C. 61, 317 S.E. (2d) 137 (Ct. App. 1984) (the discretion to grant or refuse specific performance is a judicial discretion to be exercised in accordance with special rules of equity and with regard to the facts and circumstances of each case).